# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BYRON H.[1]**, | Case No. 1:23-cv-18-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

Kevin Kerr, KERR ROBICHAUX & CARROLL, P.O. Box 14490 Portland, OR 97296.
Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief,
UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204;
Katherine B. Watson, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL,
Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104.
Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Byron H. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner) denying Plaintiff's application for supplemental

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

security income benefits (SSI). For the following reasons, the Court affirms the Commissioner's
decision.

## STANDARD OF REVIEW

The decision of the administrative law judge (ALJ) is the final decision of the
Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the
proper legal standards and the findings are supported by substantial evidence. 42 U.S.C.
§ 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial
evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of
Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53
F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must
uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable
interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of
the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v.
Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court
must consider the entire record as a whole and may not affirm simply by isolating a specific
quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting
*Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A
reviewing court, however, may not affirm the ALJ on a ground upon which the ALJ did not rely.
*Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A.  Plaintiff's Application

Plaintiff applied for SSI on November 15, 2019, alleging a disability onset date of March 4, 2019. AR 173. Plaintiff's date of birth is May 27, 1968, and he was 50 years old as of the alleged disability onset date. AR 55. The agency denied Plaintiff's claims both initially and upon reconsideration, and Plaintiff requested a hearing. AR 62, 76, 96. Plaintiff appeared before an ALJ for a hearing on July 22, 2021. AR 27. The ALJ issued a decision denying Plaintiff's claim for benefits. AR 15-22. Plaintiff requested a review of the ALJ's decision, which the Appeals Council denied. AR 1, 7. The ALJ's decision thus became the final decision of the Commissioner and Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g).

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Keyser*, 648 F.3d at 724-25. Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the analysis continues beyond step three, the ALJ must evaluate medical and

other relevant evidence to assess and determine the claimant's "residual functional capacity"

(RFC).

The claimant bears the burden of proof at steps one through four. *Bustamante v.*

*Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098

(9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d

at 1100. At step five, the Commissioner must show that the claimant can perform other work that

exists in significant numbers in the national economy, "taking into consideration the claimant's

residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R.

§§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the

Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform

other work existing in significant numbers in the national economy, the claimant is not disabled.

*Tackett*, 180 F.3d at 1099; *see Bustamante*, 262 F.3d at 954.

## C.  The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

since his application date of November 15, 2019. AR 17. At step two, the ALJ found that

Plaintiff had the following severe impairments: diffuse idiopathic skeletal hyperostosis, cervical

disc bulges and disc marginal osteophytes, diffuse bilateral moderate facet spondylosis with

neuropathy, and obesity. *Id*. At step three, the ALJ determined that none of the impairments,

either individually or in combination, met or medically equaled the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18.

The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform light

work as defined in 20 C.F.R. § 416.967(b), except he can frequently climb ramps or stairs, can

never climb ladders, ropes or scaffolds, can frequently balance, stoop, or crawl but only

occasionally kneel or crouch, must avoid exposure to workplace hazards, including machinery with moving parts, unprotected heights, or uneven terrain, can occasionally reach overhead, and can frequently handle or finger. *Id*.

## DISCUSSION

Plaintiff argues that the ALJ erred by (A) improperly discounting Plaintiff's subjective symptom testimony, (B) improperly rejecting medical opinion evidence from Plaintiff's treating physicians, Drs. Steven Lali, M.D., and Ronald Sinclair, M.D., and (C) improperly assessing Plaintiff's RFC. The Court addresses each argument in turn.

### A. Plaintiff's Subjective Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and

limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

In making his finding, the ALJ made the boiler plate conclusion that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 19. The ALJ then discussed Plaintiff's medical record, including a statement regarding Plaintiff's improvement with physical therapy. In analyzing the persuasiveness of the medical opinions, the ALJ again discussed Plaintiff's improvement with treatment. Thus, the Court construes Plaintiff's improvement with treatment as a separate reason the ALJ provided to discount Plaintiff's subjective symptom testimony. *See Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (explaining that a court can uphold the ALJ's decision "[e]ven when an agency explains its decision with less than ideal clarity" so long as "the agency's path may reasonably be discerned" (quoting *Ala. Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 497 (2004)).

Plaintiff argues that the ALJ erred in discounting Plaintiff's subjective symptom testimony. Plaintiff contends that the ALJ failed to explain what testimony was undermined by

what evidence. Plaintiff also argues that the reasons provided are not clear and convincing and are not supported substantial evidence.

### 1.  Specificity

Plaintiff argues that the ALJ simply recited Plaintiff's medical record, did not identify "what testimony was not credible and why," and thus the ALJ's opinion is not sufficiently specific. An ALJ must specifically identify what evidence contradicted what testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (stating that an ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion" (quoting *Vasquez*, 572 F.3d at 592). A court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [a clamaint's] pain testimony where . . . the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (emphasis in original) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination" but must "specify which testimony she finds not credible," and the district court may not "comb the administrative record to find specific conflicts." *Brown-Hunter*, 806 F.3d at 489 (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)); *see also Lambert*, 980 F.3d at 1278 (stating that "provid[ing] a relatively detailed overview of [a claimant's] medical history . . . 'is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.'" (emphasis in original) (quoting *Brown-Hunter*, 806 F.3d at 494)). Instead, the ALJ must "identify the testimony she found not credible"

and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to do so is legal error. *Id.*

Plaintiff's disability is based on alleged pain. The ALJ included specific statements Plaintiff made to providers regarding his alleged pain, and then discussed the medical records that did not support those statements. For example, the ALJ noted that in early 2020 Plaintiff complained of neck pain, and the ALJ discussed treatment records that did not support that statement. AR 19. The ALJ also states that in late 2020 Plaintiff complained of neck and pain, and the ALJ then discussed treatment records that did not support that complaint. The ALJ did not err for lack of specificity.

### 2. Improvement with Treatment

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3). For example, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester*, 81 F.3d at 833 ("Occasional symptom-free periods . . . are not inconsistent with disability.").

The ALJ rejected Plaintiff's testimony because his pain improved when treated with physical therapy. AR 19-20 (citing AR 480, 750). The treatment notes referenced by the ALJ provide comprehensive updates over the course of treatment, from March 16, 2020 to July 20, 2020, and a second set from December 29, 2020 to March 16, 2021. AR 480, 750. The assessment from March to July 2020 document Plaintiff's continued progress over time, noting that Plaintiff improved, even if sometimes slowly, that he had good progress and tolerance to

treatment, that he continued to improve in function, and that his strength, range of motion, and pain levels improved, and recommending that his therapy exercises needed to become a lifestyle routine rather than a temporary event. AR 480. Plaintiff's physical therapy provider also noted that Plaintiff either met or was progressing towards all of his short- and long-term goals and that he should continue physical therapy to continue addressing his complaints. AR 480-81. The assessment from December 2020 to March 2021 also reflected overall improvement, showing that Plaintiff was making "very good progress in ROM [range of motion], some progress in strength and progress in function." AR 750. He also was making progress in cervical range of motion, experiencing less numbness and tingling in his arms, and experiencing improved strength in his right shoulder. *Id.* Plaintiff's provider noted that while Plaintiff experienced some setbacks in his cervical range of motion, pain, and numbness, it was attributed to missing appointments. *Id*. This assessment again stated that Plaintiff would need ongoing physical therapy to continue addressing his complaints. *Id.* When Plaintiff visited Dr. Lali on July 5, 2019, he reported that he was in a "considerable amount of pain after physical therapy," that it was "somewhat beneficial," and that he decided to stop taking NSAIDs and chose to try to "tough out the pain." AR 333.

Plaintiff argues that the record shows that Plaintiff never sustained any *prolonged* improvement. The record, however, shows that Plaintiff's condition improved with physical therapy. Plaintiff offers no explanation for why he did not continue to engage in a treatment that was improving his condition. The standard is whether a condition *can be* controlled with treatment. *See Warre*, 439 F.3d at 1006. And a claimant's failure to obtain helpful treatment, absent explanation, cannot preclude the Commissioner from relying on that improvement on the basis that it was not sustained. *Cf.* 20 C.F.R. 20 C.F.R. § 416.929(c)(3) (stating that the amount

of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms"). The ALJ did not err by considering Plaintiff's improvement with treatment.

### 3.  Lack of Support Medical Records

An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Robbins*, 466 F.3d at 883; 20 C.F.R. §§ 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

At the hearing, Plaintiff testified that he cannot sustain full-time employment because of numbness he experiences on his left side and in both of his feet, pain in his left arm and shoulder, as well as his neck, swelling in both ankles, neuropathy in both arms, and constant pain in his neck and shoulders. AR 41. For the pain, he testified to using Ibuprofen and physical therapy. AR 42. He also testified that he can sit for 10-15 minutes before needing to change position, can walk five to 10 minutes before needing to rest, and he has not tried lifting anything heavy, or even a gallon of water. AR 44. Plaintiff stated he has trouble reaching, using his hands, and bending at the waist and knees, resulting in him losing balance. *Id.* When asked about his obesity, Plaintiff testified that his weight does not affect his physical condition. AR 48.

In discounting Plaintiff's physical symptom testimony, the ALJ found that Plaintiff's testimony was unsupported by the objective medical evidence.[3] AR 19-20. In his function report, Plaintiff stated he could not sit and stand for long periods of time, could not lift more than 10 pounds, had to constantly change position, is in constant pain, but can otherwise take care of his personal hygiene, household chores, prepare meals, grocery shop, and handle stress. AR 240-47. The ALJ found that despite Plaintiff's complaints of pain, he exhibited normal range of motion, normal motor strength, normal heart and lung function, and presented in no acute distress. AR 19 (citing AR 303-04). The ALJ further noted that in early 2020, while Plaintiff reported experiencing neck pain and upper extremity numbness, the medical records showed muscle spasms in the thoracic and lumbar regions, an antalgic gait, and neck tender to palpitation, but Plaintiff presented as healthy appearing, in no acute distress, and physical therapy showed improved physical function and decreased pain levels. AR 19 (citing AR 318-19, 323, 490). Lastly, the ALJ found that even though Plaintiff continued complaining of neck and arm pain in late 2020, and had some cervical tenderness and slight weakness in his right upper extremity, he had a normal gait and was in no acute distress. AR 19 (citing AR 708, 710-11).

The ALJ does not explain how Plaintiff's complaints of pain in his neck and arms and numbness are undermined by his intermittently normal gait, normal heart and lung function, lack of acute distress, or presenting as healthy. This is particularly so given the more closely related abnormal findings, such as his abnormal gait, muscle spasms, and neck tenderness in early 2020

---

[3] The ALJ used the boiler plate text now seen in most ALJ opinions that Plaintiff's testimony was "inconsistent" with the medical evidence. The ALJ's discussion, however, shows that the ALJ found that the objective medical evidence did not support the alleged severity of Plaintiff's symptoms and limitations, as opposed to finding any specific conflict or contradiction that was inconsistent with any specific testimony by Plaintiff. By way of example of the latter, Plaintiff testified he could walk no more than 10 minutes and the ALJ pointed to no medical record in which Plaintiff stated to a provider that he walked 30 minutes per day for exercise.

and his cervical tenderness and weakness in his right upper extremity in late 2020. Nor did the ALJ consider whether the medical record supported Plaintiff's testimony at the hearing or in his function report. The ALJ only analyzed the contemporaneous statements Plaintiff made to medical providers. Therefore, the ALJ erred in rejecting Plaintiff's testimony based on inconsistencies with the objective medical record.

## B.  Medical Opinion Evidence

Plaintiff filed his application for benefits on November 15, 2019. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. §§ 416.920c governs how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 416.920c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. §§ 416.920c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. 20 C.F.R. §§ 416.920c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. 20 C.F.R. §§ 416.920c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking to factors such as the length of the treatment relationship, the frequency of the claimant's

examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether there is an examining relationship. *Id.* §§ 416.920c(c)(3). An ALJ is not, however, required to explain how he or she considered these secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* §§ 416.920c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. §§ 416.920c(b). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32 F.4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations. . . . Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." (citation omitted)).

### 1.  Dr. Steven Lali, M.D.

Dr. Lali began treating the Plaintiff on July 5, 2019, and continues to treat him. AR 879. Dr. Lali opined that because of Plaintiff's back pain and left arm radiculopathy due to his diffuse idiopathic skeletal hyperostosis, cervical spine disc bulge, and neuropathy, Plaintiff would miss at least 16 hours of work or more a month and would be off task for 20% of an eight-hour workday. AR 881. He also stated Plaintiff could, in an eight-hour workday, occasionally lift or carry 10-20 pounds, frequently lift or carry up to 10 pounds, stand or walk for two hours, and sit for two to four hours, and that Plaintiff would need to recline, lie down, and stretch. AR 880. Dr. Lali also noted that Plaintiff could never stoop or bend, but could occasionally climb,

balance, kneel, crouch, crawl, reach overhead, forward, and laterally, as well as occasionally

handle, finger, and feel. *Id*. The ALJ did not find Dr. Lali's opinion fully persuasive because

Plaintiff's physical therapy records showed improved strength and mobility and Dr. Lali's notes

did not contain any clinical findings to support his opinion. AR 20 (citing AR 737, 750).

An independent review of the record shows that the ALJ's holding that Dr. Lali's opinion

is not fully supported by medical record evidence is a rational reading of the record. *See*

*Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation,

it is the ALJ's conclusion that must be upheld."). Dr. Lali's records contain no clinical findings

that would support the severe limitations contained in his physical assessment. And although

Plaintiff's subjective complaints of pain are noted throughout Dr. Lali's records, there are also

reports of Plaintiff not following up on recommendations to neurology for his back pain,

adamantly refusing injection therapy even if he could afford it, and choosing to endure the pain

rather than take any narcotics or NSAIDs. AR 327, 333, 703. The ALJ thus did not err in finding

Dr. Lali's opinion not to be fully persuasive.

### 2.  Dr. Roland Sinclair, M.D.

Plaintiff argues the ALJ failed to address Dr. Sinclair's medical opinion. Plaintiff cites

two chart notes from Dr. Sinclair. The first is from March 18, 2019. AR 341. The chart note

reflects that Dr. Sinclair reported that Plaintiff "has been off work," discussed a treatment plan,

and noted that "in the meantime he will stay off work." *Id.* The second is from June 3, 2019.

AR 337. Dr. Sinclair described that Plaintiff had begun seeing rheumatology and orthopedics,

that they will need to consider vocational rehabilitation and long-term disability, and that "We

are not allowing him to return back to work. We are still waiting for follow-up visits with the

orthopedic surgeon and with rheumatology." *Id.*

The Commissioner argues that the ALJ was not required to specifically address Dr. Sinclair's medical evidence because he did not offer a medical opinion, nor is the ALJ required to specifically address every piece of evidence. The Court agrees with the Commissioner.

A medical opinion is a "statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations" as it pertains to an individual's ability to work. 20 C.F.R. § 416.913(a)(2). Plaintiff argues that Dr. Sinclair's statements about not allowing Plaintiff to work are medical opinions, but Dr. Sinclair provided no indication of what Plaintiff could still do despite his impairments. AR 337, 341. Thus, Dr. Sinclair did not provide a medical opinion as that term is used in the Social Security Act. Therefore, the ALJ did not err by not evaluating Dr. Sinclair's chart notes.

## C.  Step Five

Plaintiff argues that the ALJ erred at step five because the hypothetical posed to the vocational expert did not include all of Plaintiff's limitations because his subjective symptom testimony and Dr. Lali's medical opinion were improperly rejected. As discussed above, however, the Court affirms the ALJ's evaluation of Plaintiff's subjective symptom testimony and Dr. Lali's opinion. Therefore, the hypotheticals posed to the vocational expert were proper.

### CONCLUSION

The Court AFFIRMS the Commissioner's decision that Plaintiff was not disabled.

**IT IS SO ORDERED**.

DATED this 3rd day of November, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge